DIMITRI WILLIAMSON

    v.

PRINCE GEORGE'S COUNTY,
MARYLAND, et al.

:
:
:    Civil Action No. DKC 10-1100
:
:

## MEMORANDUM OPINION

Presently pending and ready for resolution in this civil rights case is a motion to dismiss or, in the alternative, for summary judgment filed by Defendants Prince George's County and Correctional Officer Tara Gray. (ECF No. 14-2). Because the issues have been fully briefed and no hearing is necessary, the court now rules. *See* Local Rule 105.6. For the reasons that follow, Defendants' motion will be denied.

## I. Background

### A. Factual Background

The following facts are uncontroverted.

This case stems from an altercation at the Prince George's County Department of Corrections ("DOC"). On the morning of December 16, 2009, the Prince George's County Police Department received reports that someone was breaking into vehicles near the 3500 block of Regency Parkway near Suitland, Maryland. (ECF No. 14-2, at 5). An officer arrived on the scene, spotted Plaintiff Dimitri Williamson walking nearby, and attempted to

question him. (*Id.*). Instead of stopping, Williamson ran, but the officer eventually apprehended him after a scuffle. (*Id.*). After securing Williamson, the officer canvassed the area and found several cars with broken windows, various pieces of identification, screwdrivers, and a box of earrings. (*Id.*). The items were all found "in the area where initial contact was made" with Williamson. (*Id.*).

After Williamson was placed under arrest, another officer arrived to transport him to the DOC. (*Id.*). En route, however, Williamson complained that his head and wrist hurt; as a result, the officer took Williamson to Southern Maryland Hospital for treatment. (*Id.* at 5-6). After Williamson was treated, the officer took Williamson to the DOC in Upper Marlboro, Maryland. (*Id.* at 6).

Most of the remaining facts are in dispute.

According to Williamson, shortly after arriving at the DOC, Officer Gray began fingerprinting him. (ECF No. 21-1 ¶ 2). Williamson asked Gray to make sure that "some earrings that he bought for [his] daughter for Christmas" – presumably the earrings found at the scene of his arrest – "were put into storage for me." (*Id.*). Williamson maintains that Gray responded, "I'm not doing nothing!" When Williamson told Gray, "You all are so petty in here," Gray remarked, "You funny." (*Id.*). Then, says Williamson, Gray hit him in the throat with

his elbow, knocking him to the floor. (*Id.*). Gray stood over Williamson and repeatedly punched him in the face; he then sat on Williamson and continued the punching. (*Id.*). Williamson asked, "Why do you keep punching me in the face?", but Gray's only response was more punching. (*Id.*). The onslaught only stopped when the DOC's Emergency Response Team ("ERT") appeared and pulled Gray off Williamson. (*Id.*). Williamson suffered a broken nose and cuts around his eyes (*id.*), resulting in a $2,648 medical bill at Washington Hospital Center (ECF No. 21-2, at 1).

Williamson insists that throughout all of the events he never hit, touched, or threatened Gray. (ECF No. 21-1 ¶ 2). Nor did he act disorderly or refuse any lawful command. (*Id.*). In short, Williamson says the attack was "wholly unprovoked." (*Id.*).

Defendants tell a much different story. According to them, after Williamson was brought to the DOC, a search was conducted and his property inventoried. (ECF No. 14-3 ¶ 5). That property was then placed in a secure locker, where it was to remain until Williamson's release. (*Id.* ¶¶ 6-7). Officer Gray then began fingerprinting Williamson. (*Id.* ¶ 9). During the course of that fingerprinting, Williamson "began to complain about a pair of earrings that were not placed into his property bag." (*Id.* ¶ 9). Officer Gray told Williamson he would speak

with the officer who transported him to the DOC about the earrings. (*Id.* ¶ 10). That officer stated that Williams "was unable to provide proof of purchase"; consequently, the earrings were placed in the Prince George's County Police Department's property unit. (*Id.* ¶ 11). When Officer Gray told Williamson this, he purportedly became "irate and very loud." (*Id.* ¶ 12).

Officer Gray says he told Williamson to calm down, as the earrings would be returned as soon as he could provide proof of ownership. (*Id.* ¶ 13). Apparently unsatisfied with that explanation, Williamson allegedly "began shouting expletives." (*Id.* ¶ 14). Officer Gray again told Williamson to calm down. (*Id.* ¶ 15).

Unfortunately, according to Officer Gray, Williamson chose not to calm down. When Officer Gray walked past Williamson, Williamson struck him in the side of his neck. (*Id.* ¶ 16). Officer Gray responded by striking Williamson in the face, sending him to the ground. (*Id.* ¶ 17). But Williamson refused to be subdued and kept throwing punches; Officer Gray "responded likewise." (*Id.* ¶ 18). The ERT arrived and helped subdue Williamson, but only after Officer Gray tore his right bicep tendon, tore cartilage in his left knee, and suffered a Baker's

cyst on his left knee. (*Id.* ¶¶ 19-21; ECF No. 14-5).[1]  He was transported to Southern Maryland Hospital shortly after the incident. (ECF No. 14-4 ¶ 9).

Defendants characterize Williamson's injuries as less serious.  They report that the ERT took Williamson to the medical unit for treatment, where he was treated only for small cuts over his left eye and right eyebrow.  (*Id.* ¶¶ 6-7).  Afterwards, the ERT returned Williamson back to intake for the remainder of his processing. (*Id.* ¶ 8).

### B.    Procedural Background

Williamson filed a complaint in the Circuit for Prince George's County on April 27, 2010. (ECF No. 2).  The five-count complaint asserts four counts against Officer Gray[2]:  assault,

---

[1]    The DOC's internal investigation confirmed Officer Gray's account of the events.  (ECF No. 14-4, at 2-8). Defendants also reference an eyewitness who supports Officer Gray's view.  That eyewitness' account cannot properly be considered, however, as it is hearsay.  Although investigatory reports may be admitted as public reports or business records under Rules 803(6) or 803(8) of the Federal Rule of Evidence, any hearsay statements from third parties contained within those reports must be independently admissible.  *Cf. Hare v. Opryland Hospitality, LLC*, No. DKC 09-0599, 2010 WL 3719915, at *15 (D.Md. Sept. 17, 2010) (citing *United States v. Burruss*, 418 F.2d 677, 678 (4th Cir. 1969)) ("[T]he portions of the police report containing statements made by third party witnesses, if not subject to another hearsay exception, remain inadmissible hearsay.").

[2]  The caption and paragraph 3 of the complaint name Officer Gray "individually and in his official capacity" as either a correctional or police officer of Prince George's County.  An

battery, negligence, and an excessive force claim under 42
U.S.C. § 1983.  (*Id.* ¶¶ 14-24).  The fifth count, a second
excessive force claim under 42 U.S.C. § 1983, is asserted
against Prince George's County.  (*Id.* ¶¶ 25-28).

Defendants then removed the complaint to this court on May
24, 2010.  (ECF No. 1).  Roughly a week later, on June 2, 2010,
Defendants filed the present motion to dismiss or for summary
judgment.  (ECF No. 14).  Williamson opposed (ECF No. 21) and no
reply was filed.

## II. Standard of Review

Defendants have moved to dismiss or, in the alternative,
for summary judgment.  A court considers only the pleadings when
deciding a Rule 12(b)(6) motion to dismiss.  Because Defendants'
motion relies extensively on matters outside the pleadings, the
court will construe it as a motion for summary judgment.  *See*
Fed.R.Civ.P. 12(b); *see also Walker v. True*, 399 F.3d 315, 319
n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568
(D.Md. 2008).

A court may enter summary judgment only if there is no
genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law.  *See* Fed.R.Civ.P.

official capacity claim is the same as a claim against the
County.  Inasmuch as Plaintiff has sued Prince George's County
for the federal constitutional claim, any official capacity
claim against Officer Gray in count four is redundant.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

## III. Analysis

As noted above, Williamson asserts four counts against Officer Gray: excessive force, assault, battery, and

negligence. He asserts an additional claim premised on excessive force against Prince George's County. Each of these claims is addressed in turn.

**A. Claims Against Officer Gray**

**1. Excessive Force**

Defendants first contend that Williamson has not stated a claim based on excessive force against Officer Gray. (ECF No. 14-1, at 5-8). "Excessive force claims of a pretrial detainee [such as Williamson] are governed by the Due Process Clause of the Fourteenth Amendment." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (quoting *Young v. Prince George's Cnty., Md.*, 355 F.3d 751, 758 (4th Cir. 2004)). The protections of the Fourth Amendment "do not extend to arrestees and pretrial detainees." *Id.*[3]

To succeed on his excessive force claim, Williamson must show that Gray "inflicted unnecessary and wanton pain and suffering" on him. *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *accord Orem*, 523 F.3d at 446; *Carr v. Deeds*, 453 F.3d 593, 605

---

[3] The parties both refer to the Eighth Amendment. "Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment and sentenced prisoners by the Eighth Amendment's prohibition on cruel and unusual punishment." *See Morgan v. Matolka*, No. CCB-99-2607, 2000 WL 907614, at *1 n.1 (D.Md. June 26, 2000) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). Nevertheless, the mistaken references are immaterial because "the legal standards . . . are essentially the same regardless of the status of the plaintiff." *Id.* (citing *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998)).

(4th Cir. 2006). Determining whether that standard has been met "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2[d] Cir. 1973)). Other factors worthy of consideration in determining whether the "constitutional line has been crossed" include "the need for the application of force, the relationship between the need and the amount of force used, [and] the extent of the injury inflicted." *Orem*, 523 F.3d at 446 (quoting *Johnson*, 481 F.2d at 1033). Force becomes constitutionally excessive when it essentially "amounts to punishment." *United States v. Cobb*, 905 F.2d 784, 788 (4th Cir. 1990) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

There is a genuine dispute over the nature of the force Officer Gray used against Williamson. If Defendants' account were uncontradicted, the record might support a finding that the force Officer Gray used was a reasonable act of self-defense in response to an out-of-control detainee who physically lashed out. If Defendants' view of the facts were the only one, that force might have also been justified by the threat Williamson posed to others in the processing area.

But at this stage, the court must consider Williamson's sworn statements, which tell a much different story. He states

that the beating he received at the hands of Officer Gray was entirely unprovoked, spurred merely by a simple question about his belongings. According to him, Officer Gray continued punching him even after he was pushed to the ground. He presents evidence that he suffered injuries. Such facts support a claim for excessive force. *See, e.g.*, *Simms v. Bruce*, 104 F.App'x 853, 857 (4th Cir. 2004) (affirming denial of summary judgment in case where inmate presented evidence that he was "beaten and kicked into submission" by corrections officers despite his cooperation).

Defendants also argue that the injuries Williamson suffered are *de minimis* and therefore fail to support a claim of excessive force. In support, they quote language that they say comes from the Supreme Court's recent decision in *Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010). (ECF No. 14-1, at 7). The quoted language, however, comes from *Riley v. Dorton*, 115 F.3d 1159 (4th Cir. 1997). The approach applied in *Riley*, which places decisive weight on the *de minimis* nature of the injuries of a pre-trial detainee, was explicitly rejected in *Wilkins.* *See Wilkins*, 130 S.Ct. at 1175 ("The Fourth Circuit's strained reading of *Hudson* [*v. McMillan*, 503 U.S. 1 (1992),] is not defensible."). Although *Wilkins* arose in the Eighth Amendment context, it likely applies in the Fourteenth Amendment context as well. Therefore, even if Williamson's injuries could be

characterized as *de minimis*, that fact would not foreclose his claim for excessive force.

In addition, Defendants invoke the doctrine of qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether qualified immunity applies, the court must make two determinations. First, it must consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the evidence does establish a violation of a constitutional right, the court should assess whether the right was "clearly established" at the time of the events at issue. *Id.*[4] "The answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007) (quoting *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)).

---

[4] The court may decide which question to consider first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

As explained above, Williamson has made a sufficient showing at this stage that Officer Gray violated his Fourteenth Amendment rights by employing excessive force. The only remaining question then is whether the right was clearly established at the time of the events, such that officials had "'fair warning' that their conduct was unconstitutional."[5] *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[A]lthough the exact conduct at issue need not have been held to be unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). If the right was not clearly established, then qualified immunity shields the officer from liability.

Defendants argue that Officer Gray violated no clearly established right because he reacted to "the verbal conduct of

_____

[5] "The existence of disputed material facts – which must be submitted to a jury – does not alter the 'essentially legal' nature of the question of whether the right at issue was clearly established." *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005).

Plaintiff along with [his] striking [of] Defendant Gray and the ongoing physical altercation." (ECF No. 14-1, at 9). This view, however, assumes a reading of the facts in a light favorable to Defendants. Instead, viewing the facts in the light most favorable to Williamson, a reasonable officer would certainly have understood in late 2009 that an unprovoked attack on a cooperating pre-trial detainee would violate that individual's rights. *See Simms*, 104 F.App'x at 857 ("[I]n September of 1998, it was clearly established that pre-trial detainees were protected from wanton beatings that exceeded good faith efforts to restore order."); *see also, e.g.*, *Hadley v. Gutierrez*, 526 F.3d 1324, 1333-34 (11th Cir. 2008) ("Applying the excessive force standard would inevitably lead every reasonable officer . . . to conclude that the force used here – punching a non-resisting criminal suspect for no apparent reason other than malice – is not protected by our constitution." (quotation marks omitted)). Qualified immunity does not apply.

## 2. Assault and Battery

Williamson also asserts one count of assault and one count of battery against Officer Gray. "A battery occurs when one intends a harmful or offensive contact with another without the person's consent." *Nelson v. Carroll*, 355 Md. 593, 601 (1999); *accord Johnson v. Valu Food, Inc.*, 132 Md.App. 118, 123 (2000) ("[T]he elements of the tort of battery consist of the

unpermitted application of trauma by one person upon the body of another person."). An assault is an attempt to do the same. *Cont'l Cas. Co. v. Mirabile*, 52 Md.App. 387, 398 (1982); *accord Lee v. Pfeifer*, 916 F.Supp. 501, 505-06 (D.Md. 1996). Defendants note that claims of assault and battery can only advance "when there is no legal authority or justification" for the officer's actions. *Hines v. French*, 157 Md.App. 536, 551 (2004) (quoting *Williams v. Prince George's Cnty.*, 112 Md.App. 526, 554 (1996)). Here, Defendants maintain that Officer Gray's actions were legally justified because "Plaintiff initiated the contact . . . [and] Defendant Gray . . . was attempting to subdue Plaintiff and restore order." (ECF No. 1-1, at 11). Thus, it might be said that Defendants offer two separate but related defenses: (1) a defense premised on Officer Gray's legal authority to subdue Williamson to maintain order and (2) a defense premised on self-defense. *See Richardson v. McGriff*, 361 Md. 437, 453 (2000) ("Self-defense is a defense to the common law tort of battery.").

But "[i]n the circumstances of this case, [the excessive force] jurisprudence also controls petitioner's actions for battery" and assault. *Id.* Williamson has provided testimony that the Officer Gray's punches were entirely unprovoked. If that account proves true, Officer Gray would have had no legal

justification for the beating.  Therefore, the court cannot grant summary judgment on those counts.

### 3.  Negligence

Williamson's final claim against Officer Gray is premised on negligence.  Defendants claim that Officer Gray is entitled to public official immunity from such a claim.  "In Maryland, public official immunity is recognized both at common law and by statute."  *City of District Heights v. Denny*, 123 Md.App. 508, 516 (1998).  Defendants rely on the latter type – statutory immunity – in this case.  The scope of that immunity is found in Md. Code Ann., Cts. & Jud. Proc. § 5-507(b)(1), which states:

> An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Maryland courts have "pointed out that the purpose of these provisions was to codify existing public official immunity, and not to extend the scope of qualified immunity beyond its Maryland common law boundaries."  *Houghton v. Forrest*, 183 Md.App. 15, 40 (2008), *rev'd on other grounds by* 412 Md. 578 (2010); *see also Prince George's Cnty. v. Brent*, 414 Md. 334, 355 (2010) ("The immunity contemplated in [Section 5-507] is common law public official immunity.").  Accordingly, even though the statute refers only to officials of *municipal*

corporations, the statute "applies to county as well as municipal officers." *Livesay v. Baltimore Cnty.*, 384 Md. 1, 12 (2004) (finding that public official immunity applied to county corrections officer). Officer Gray could therefore invoke the doctrine as a defense if he can show (1) that he was acting in a discretionary capacity, (2) he was acting without malice, and (3) he was acting within the scope of his employment.

The parties focus on the second of these elements: malice. Malice in this context means "actual malice," that is, "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will, or fraud." *Lee v. Cline*, 384 Md. 245, 268 (2004) (quotation marks omitted); *see also Shoemaker v. Smith*, 353 Md. 143, 163 (1999) ("The Court of Special Appeals has long applied that, or some similar, standard of 'actual malice' in defining 'malice' for purposes of public official immunity under common law or under State and local tort claims laws."). Defendants suggest Officer Gray did not act with malice because, once again, his "actions were in response to Plaintiff's verbal behavior, physical contact against Defendant Gray, and continued physical altercation with Defendant Gray." (ECF No. 14-1, at 12). But Williamson has presented evidence that the incident began with a sarcastic response from Officer Gray to a reasonable question from Williamson, and ended with a wholly gratuitous beating. Such

facts evidence malice. *Sawyer v. Humphries*, 322 Md. 247, 261 (1991) ("Wrestling another to the ground, pulling his hair, and hitting him on the face, again without cause or provocation, is certainly malicious conduct."); *see also Solis v. Prince George's Cnty.*, 153 F.Supp.2d 793, 805 (D.Md. 2001) ("Officer Ruffin choked Plaintiff and struck him multiple times for no apparent reason. Such unjustified application of malignant force may give rise to a reasonable inference that Officer Ruffin was motivated by ill will toward or an affirmative intent to injure Plaintiff."). Summary judgment on this count, like the other counts against Officer Gray, cannot be granted.

### B. Claim Against Prince George's County

Williamson also asserts a Section 1983 claim against Prince George's County premised on excessive force. Recognizing that he cannot bring a Section 1983 claim against the County based on *respondeat superior* liability, *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690-95 (1978), Williamson instead alleges that "Officer Gray's actions were the result of Prince George's County's custom and practice of permitting its correctional officers to use excessive force." (ECF No. 2 ¶ 28).

"A county may be found liable under 42 U.S.C. § 1983 only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury." *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009). A policy means more than formal legislative enactments; "it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy." *Kirby v. City of Elizabeth City, N.C.*, 388 F.3d 440, 451 (4th Cir. 2004) (quotation marks omitted); *see also Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000) ("A government policy or custom need not have received formal approval through the municipality's official decisionmaking channels to subject the municipality to liability."). For instance, "[i]f a police force develops an unconstitutional 'custom or usage,' i.e., a widespread practice of a particular unconstitutional method, such custom or use may be the basis for municipal liability." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 210 (4th Cir. 2002). To establish a municipal policy through this method of proof, a plaintiff must provide evidence of a "widespread and permanent practice," *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999), or produce recorded reports to or discussions by a municipal government body, *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). "It is well settled that isolated incidents of unconstitutional conduct by subordinate employees

are not sufficient." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) (quotation marks omitted).

Williamson provides two forms of purported evidence of Prince George's County's alleged custom and practice of "permitting its correctional officers to use excessive force." (ECF No. 2 ¶ 28). First, he presents five "notice of claim" letters submitted to Prince George's County by five other individuals. (ECF No. 21-3). These letters request damages from the County based on one alleged instance of false arrest (committed by a Prince George's County Deputy Sheriff) and four instances of excessive force (all committed by Prince George's County Police Officers). As an initial matter, to the extent Williamson offers these claim letters to prove the facts contained in them, they would constitute inadmissible hearsay. *Cf. Eddy v. Waffle House, Inc.*, 482 F.3d 674, 682 (4th Cir. 2007), *rev'd on other grounds by* 554 U.S. 911 (2008) (stating "evidence of other lawsuits and complaints" would constitute hearsay if introduced to prove facts alleged therein). "[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Md. Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991).

Even if the letters were admissible, they would not justify denying summary judgment on the claim against Prince George's

County. The claim letter concerning false arrest is not useful evidence here, as it does not concern the specific constitutional violation that Williamson alleges, *i.e.*, excessive force. *See Randall*, 302 F.3d at 210 (stating that there must be "a sufficient casual connection between the 'municipal custom and usage' and the *specific violation*" (emphasis added)). In addition, all five of the letters involve conduct by other agencies associated with the County, not the Department of Corrections. Thus, they would not support an inference that County *corrections* officers have a custom of using excessive force. *See, e.g.*, *Vizbaras v. Prieber*, 761 F.2d 1013, 1017 (4th Cir. 1985) ("As the Vizbarases did not offer any evidence of other alleged incidents involving the use of excessive force *by the County police officers*, we hold that the district court did not err in dismissing the Vizbarases' claim against the County." (emphasis added)). Even overlooking those issues, the mere existence of claims against Prince George's County does not establish the requisite widespread practice of approving excessive force. That would require an assumption that all the allegations in those claim letters were true. As one court explained:

> [T]he mere fact that a number of lawsuits
> have been filed, [or, in this case, might be
> filed in the future,] without any
> information as to whether the suits are
> meritorious or spurious, or alternatively,

> any evidence that the municipality ignored
> such complaints such that it constituted
> deliberate indifference to any potential
> problem of excessive force, does not assist
> a fact-finder in determining whether the
> [municipality] actually has a historical
> problem of its . . . officers using
> unconstitutionally excessive force in the
> performance of their duties.

*Ostroski v. Town of Southold*, 443 F.Supp.2d 325, 346 (E.D.N.Y. 2006) (listing cases).

Williamson also provides a second category of supposed evidence: five printouts of internet webpages containing articles about alleged police abuses in Prince George's County. The printouts include an article from the "Maryland Accident Law Blog," an article that references in passing a case brought against Prince George's County by the Department of Justice's Civil Rights Division, and three articles from 2001 detailing alleged abuses by the Prince George's County Police Department. (ECF No. 21-4). These articles suffer from many of the same deficiencies as the claim letters, but the most glaring of these is the fact that the internet articles are unauthenticated hearsay. *See United States v. Heijnen*, 149 F.App'x 165, 169 (4th Cir. 2005) (concluding that "documents downloaded from the internet . . . are hearsay"); *accord United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000). Such articles are analogous to the newspaper articles that courts in this circuit have frequently recognized as hearsay. *See, e.g.*, *Gantt v. Whitaker*,

57 F.App'x 141, 150 (4th Cir. 2003) ("This circuit has consistently held that newspaper articles are inadmissible hearsay to the extent that they are introduced to prove the factual matters asserted therein." (quotation marks omitted)); *Team Gordon, Inc. v. Fruit of the Loom, Inc.*, No. 3:06-cv-201-RJC-DCK, 2010 WL 419952, at *1 (W.D.N.C. Jan. 29, 2010) (same); *Powell v. Town of Sharpsburg*, No. 4:06-CV-117-F(2), 2009 WL 863348, at *6 (E.D.N.C. Mar. 27, 2009) (same). Moreover, as Judge Grimm thoroughly explained in *Lorraine v. Markel American Insurance Co.*, 241 F.R.D. 534, 541-62 (D.Md. 2007), electronically stored information must be properly authenticated. Williamson has not attempted to do so. When evidence from the internet is presented without adornment – without any attempt at authentication or any explanation as to how the hearsay rules are satisfied – it "is adequate for almost nothing." *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F.Supp.2d 773, 775 (S.D.Tex. 1999).

Thus, on the present record, Williamson's claim against Prince George's County could not survive summary judgment. But Williamson also argues that summary judgment is inappropriate because he has not had sufficient opportunity for discovery. In particular, he states:

> I have not been able to obtain additional
> evidence on the customs, policies, and
> practices of the Prince George's County

> Detention Center because the evidence that I
> need, i.e., records of sustained claims,
> complaints, and lawsuits alleging assaults
> against inmates by correctional personnel[,]
> is exclusively within the control of Prince
> George's County.

(ECF No. 21-1 ¶ 4). That statement is an apparent attempt to invoke Rule 56(d) (formerly Rule 56(f)) of the Federal Rules of Civil Procedure. Defendants offer no response.

As a general matter, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to the motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986). On the other hand, the party opposing summary judgment cannot bemoan the lack of discovery unless he opposes the summary judgment motion on the basis that more time for discovery is needed. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). The non-movant must make it clear to the court that more discovery is needed pursuant to Rule 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion." "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[(d)] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *Harrods*

*Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quotation marks omitted).

Williamson's declaration, although admittedly rather bare bones in form, justifies denying Defendants' motion as premature. "Generally speaking, sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." *Id.* at 247 (quotation marks and brackets omitted). Here, Williamson has stated that the evidence he needs to establish his "policy or custom" claim – other allegations and investigations regarding excessive force – are within the control of Prince George's County. Common sense supports that assertion. And although summary judgment may be appropriate at any time, the fact that Defendants' motion was filed just nine days after this case arrived in this court and before any answer was filed further buttresses the conclusion that some discovery is appropriate. Therefore, the court will deny without prejudice Defendants' motion for summary judgment on the claim against Prince George's County.

## IV. Conclusion

For the foregoing reasons, Defendants' motion will be denied. A separate order will follow.

          /s/
_____
DEBORAH K. CHASANOW
United States District Judge
